DAVID B. BARLOW, United States Attorney (#13117)
BRANDEN B. MILES, Special Assistant United States Attorney (#9777)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:12-CR-76 |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF THE COURT** |
| TIMOTHY RAY GRIMSLEY, | |
| Defendant. | JUDGE: David Nuffer |

On September 18, 2013, this matter came before the Court for a hearing on Defendant's Motion to Suppress[1] evidence discovered during the arrest of the Defendant on two separate dates. Bel-Ami De Montreux, representing Defendant, and Branden B. Miles, representing the United States, were present. After receiving memorandums and listening to oral arguments from both parties, the Court makes the following Findings of Fact, Conclusions of Law and Order:

**FINDINGS OF FACT**

June 13, 2012

1. On June 13, 2012, Officer Don Johnson of the Ogden Police Department received information from a confidential informant that Timothy Grimsley ("Defendant"), a wanted fugitive, was currently at 736 East 1300 North in Ogden, Utah.

---
1 [Docket no. 17](), filed February 20, 2013.

2. Officer Johnson also learned from the informant that Defendant was known to be a drug dealer and was known to be armed. (Reporter's Transcript of Proceedings: Motion to Suppress Hearing, April 12, 2013, at 34)("Tr.").

3. Officer Johnson went to this address with Officer Kevin Murray. They parked away from the address and approached by foot. (Tr. at 34-35). As they were walking to the address they could see Defendant sitting in the passenger seat of a white Cadillac Escalade with his feet out the door. (Tr. at 35). The officers were able to positively identify Defendant based upon his mug shot photo. *Id*.

4. They approached him and informed him they had a warrant for his arrest, and that he was under arrest at that time.

5. A black bag was partially sitting on his left leg. (Tr. at 35-36).

6. Initially, Defendant did not comply with commands for his arrest and appeared to be looking for a place to run, so Officer Johnson drew his Taser and began giving commands to Defendant. (Tr. at 36). Officer Johnson directed Defendant to slowly step out of the vehicle.

7. At this point, Defendant complied with the orders. He stepped out of the vehicle slowly, at which point Officer Murray grabbed him and began to put his arms behind his back to be handcuffed. *Id*. As this was happening, Defendant stated, "I have a gun in my waistband." *Id*. This statement was unsolicited and spontaneous.

8. After he was handcuffed, a search of his person revealed a Ruger 9mm handgun that was loaded and contained 10 rounds. (Tr. at 36-37).

9. The black bag that had been sitting on Defendant's leg fell away when he stood up at the command of the officers. (Tr. at 37). Officer Johnson searched the black bag that was

now positioned on the front seat inside the open car door. *Id.*

10. Officer Johnson believed the bag may contain another weapon or narcotics. (Tr. at 48-49).

11. Defendant was handcuffed approximately six feet away from the bag at this time. *Id.* Officer Johnson believed Defendant may still be able to access the car or fight at this time. (Tr. at 44).

12. The bag contained several hypodermic needles, a baggie containing a brown substance, a digital scale, a metal spoon, a small bag of marijuana, and a bag containing crystal methamphetamine. (Tr. at 37-38).

13. Officer Johnson did not recognize the brown substance in one of the bags so he turned to Officer Murray and asked him what it was.

14. Before Officer Murray could answer, Defendant stated "It's the inside of Adderall." (Tr. at 38). No question was directed to Defendant prior to this statement. (Tr. at 39).

15. Jose Montes, another individual who was nearby, was identified as the owner of the Cadillac. *Id.*

16. Officer Johnson told him that drugs were just found in the bag on the seat and told Montes he would need to stay there until their investigation was complete. *Id.*

17. Defendant overheard this and stated "the black bag is mine and the stuff inside is mine also." *Id.*

18. Subsequently, the officers did attempt to speak with Defendant after informing him of his Miranda rights. Defendant requested to speak with his attorney. *Id.*

July 27, 2012

19. On July 27, 2012, Officer Josh Salisbury and Trent Pearson of the Murray City Police Department received a call for assistance from a bail bondsman who knew of the location of Defendant and that he had a felony arrest warrant. (Tr. at 9-10).

20. The officers confirmed the existence of the warrant for a second degree felony weapons violation and the location of Defendant at a car wash located at 4832 S. 500 W. (Tr. at 10).

21. The bail bondsman notified the officers that Defendant had arrived at the car wash in a red or burgundy vehicle. *Id*. As officers arrived at the location, they observed the vehicle sitting empty and running near an installment of vacuums. (Tr. at 10-11).

22. The officers then observed Defendant, who they identified due to prior study of his photo identification, walking near the wash bays. (Tr. at 11). They approached and arrested Defendant.

23. As they were approaching him, Defendant threw a bag containing a crystal substance into one of the wash bays. *Id*.

24. They took him to the ground and placed handcuffs on him. *Id.* After the officers finished taking Defendant into custody, they located the baggie they had observed him throw into the wash bay.

25. The baggie contained a white crystal substance which was field-tested and found to be methamphetamine. *Id*.

26. During a search of Defendant's person, the officers located a handcuff key on a necklace around his neck. (Tr. at 12).

27. They also found a cell phone in his pocket. *Id.* The bail bondsman had told the officers

that Defendant would be driving a red Chrysler Sebring. (Tr. at 22).

28. That vehicle was parked with the engine running. *Id*.

29. They asked Defendant who the vehicle belonged to and he told them a female named 'Jamie," and that her number would be in his cell phone. *Id*. His phone was out of battery, unable to be turned on, and no charger was available. (Tr. at 12, 23, 31).

30. The officers did not have any reason or evidence to believe Mr. Grimsley did not have permission to drive the car or that the car was stolen. (Tr. at 26-27).

31. The police did not look up the car in the database to look up the owner. (Tr. at 26-27).

32. The officers impounded the car for safekeeping according to Murray Police Department policies. (Tr. at 13).

33. Officer Pearson inventoried the car prior to it being towed and impounded. (Tr. at 23-24). On the front seat of the vehicle was a black book-bag. In that bag, Officer Pearson located several more bags of a methamphetamine.

34. He also found $6,021 in the bag wrapped in $1,000 increments with rubber bands, a digital scale, a hypodermic needle, a handgun holster, and cell phones. (Tr. at 24).

35. While Officer Pearson inventoried the vehicle and oversaw the safe-keep impound, Officer Salisbury transported Defendant to the Salt Lake County Jail. (Tr. at 13).

## **CONCLUSIONS OF LAW**

June 13, 2012

1. The Ogden Officers lawfully arrested the Defendant on an arrest warrant in a public place as he was seated in the car parked on the street.

5

2. The Ogden officers lawfully searched the Defendant incident to that arrest and discovered a gun concealed in his waistband.

3. Based upon the information they had previously received and the discovery of the gun in his waistband, the officers had a reason to believe evidence of the offenses of arrest would be found in the vehicle as discussed in Arizona v. Gant, 556 U.S. 331 (2009).

4. It was reasonable to search the black bag in the car for weapons or drugs based upon the totality of the circumstances.

5. The information known to the police officers at the time of the search of the bag gave probable cause to believe it contained additional evidence of the offenses of arrest.

6. This vehicle, parked on the side of a public street with an occupant that wanted to drive the vehicle away, was readily mobile.

7. The search of the bag in the vehicle was justified pursuant to the automobile exception to the search warrant requirement also.

July 27, 2012

1. The Defendant was lawfully arrested in a public place based upon the existence of a state felony arrest warrant.

2. Under Arizona v. Gant, 556 U.S. 331 (2009), a police officer, with reason to believe that evidence of the offense of arrest will be located in a motor vehicle, may search a vehicle incident to the arrest of a motor vehicle occupant or recent occupant.

3. The Murray City police officers, after observing the Defendant throw a bag of methamphetamine, during the arrest had a reasonable belief that the red Chrysler Sebring the Defendant had just left contained additional drug-related evidence.

4. After the discovery of the drugs the Defendant threw away right after leaving the vehicle, the officers had probable cause to believe the vehicle contained criminal evidence of drugs.

5. Situated as it was with the engine running and keys in the ignition, the vehicle was readily mobile and subject to warrantless search based upon probable cause.

6. The owner of the motor vehicle could not be reasonably contacted to assume care of the vehicle because the Defendant could not provide any information and law enforcement did not discover any information that would have allowed the owner to take possession of the vehicle in a reasonable amount of time. There was no duty on the officers to make inquiry for the owner beyond that inquiry which they did make.

7. The Murray City police officers, according to their written, standardized procedures, were required to impound the vehicle for safekeeping of the owner.

8. As part of those written procedures, the officers were required to conduct an inventory of the contents of the vehicle and list the contents.

9. The officers properly followed these procedures during the impound and inventory which would have also led to the lawful discovery of the drugs and other items in the vehicle.

August 22, 2012

1. The Defendant has failed to advance this incident in writing or argument, and therefore the motion is denied as it relates to this episode.

**ORDER**

Defendant's Motion to Suppress[2] is **DENIED**.

DATED this 25th day of OCTOBER 2013.

_____
DAVID NUFFER
DISTRICT COURT JUDGE

---

2 Docket no. 17, filed February 20, 2013.